Mr. Justice Hagner
delivered the opinion of the Court:
A very interesting question has been presented to the court, arising out of a controversy between four of the daughters of the late Mrs. Anastasia Patten and the oldest daughter, Mrs. Glover. The five daughters were appointed the executrices by the last will and testament of their mother, and letters testamentary were confided to them all by the Orphans’ Court on January 14, 1889. On the 27th of April following, the four unmaried daughters filed an inventory of the estate, in which Mrs. Glover did not unite. On the 28th day of June, two months and two days afterwards, an application was made to ‘the justice holding the Orphans’ Court, by the four executrices who had returned the inventory, for an order excluding Mrs.- Augusta Patten Glover from taking any part in the administration of the estate of her mother, because she had made no return of an inventory. This application was based upon the provisions of section 14, subchapter 6, of the testamentary law of Maryland of 1798, chapter 101, which reads as follows:
“If there be more than one executor or administrator named in the letters, any one or more of them, on the neglect of the rest, may return an inventory, and the executor or administrator so neglecting shall not thereafter interfere with the administration, or have any power over the personal estate of the deceased; but the executor or administrator so returning shall thereafter have the whole administration, unless, within two months after the return, the delinquent or delinquents shall assign to the court some reasonable excuse which it shall deem satisfactory.”
The application, which was filed at the first session of the Orphans’ Court occurring after the expiration of two months from the filing of the inventory by the unmarried *394 daughters, was in this form: “ Come now Mary E. Patten, Josephine A. Patten, Edith A. Patten, and Helen Patten, executrices of Anastasia Patten, deceased, by their counsel, and move the court to adjudge and order that Augusta Patten Glover, heretofore appointed and qualified as co-executrix of the said executrices, shall not hereafter interfere with the estate of the said deceased or have any power over the personal estate of the said deceased, but that the executrices aforesaid, moving herein, shall henceforth have the whole administration of the said estate, because on the 27th day of April, A. D. 1889, they duly returned an inventory of the said estate and the said Augusta Patten Glover neglected so to do and has not returned any other or different inventory in lieu thereof, and did not within two months after the return of the said inventory assign to the court any reasonable excuse in the premises, which it deemed satisfactory.”
The justice, on the same day, passed an order which, after reciting the application, “adjudged and ordered that the said Augusta Patten Glover shall not hereafter interfere with the administration of the estate of the said deceased ; but that the said Mary E. Patten, Josephine A. Patten, Edith A. Patten and Helen Patten shall hereafter have the whole administration of the estate of the said deceased' aforesaid; unless, however, cause to the contrary hereof be shown by the said Augusta Patten Glover on or before the 5th day of July next; and provided that a copy hereof be served upon her on or before the 1st day of July next.”
Mrs. Glover filed an answer, showing cause why the order should not be made final, and the justice holding the Orphans’ Court, on the 13tlr day of August, passed the following order:
“ The court having, on the 28th day of June, A. D.-1889, on motion of Mary E. Patten, Josephine A. Patten, Edith A. Patten and Helen Patten, executrices of the last will and testament of the said deceased, adjudged and ordered that *395 Augusta Patten Glover should not thereafter interfere with the administration' of the estate of the said deceased, or have any power over the personal estate of the said deceased, but that the said Mary E. Patten, Josephine A. Patten, Edith A. Patten and Helen Patten should thereafter have the whole administration of the said estate, unless cause to the contrary could be shown by the said Augusta Patten Glover; and the said Augusta Patten Glover having, on the 8th day of July, A. D. 1889, filed an answer to the said adjudication and order purporting to show cause as aforesaid, and. the said, motion, adjudication, order and answer being now under consideration by the court, it ’ is,this 13th day of August, A. D. 1889, by the court, ordered 'that the same be heard by the court at a General'Term in the first instance.”
Under that reference the matter is presented for our consideration.
It has been insisted by the petitioners that the mere fact that an inventory was not returned by Mrs. Glover within the two months after the filing of the inventory by the unmarried daughters, was fatal to the right of the delinquent executrix to interfere further in the' estate, and that the court was without authority to consider any excuse the delinquent might assign after the expiration of that time; that the legislature had, in effect, declared such negléct in itself should work a forfeiture of her right, and nothing could be heard in extenuation or explanation, unless presented to the court within the period so limited in the act. On the other hand, it is contended that this is not a mandatory provision enforcing itself, or to be enforced in every event, but should be considered as directory and not intended to deprive the court of authority to excuse a compliance with the requirements of the section, if satisfactory reasons are presented, even after the expiration of the two months.
To a full understanding of the case it is necessary the *396 facts should be somewhat gone into. The will was filed in September, 1888. In December, Josephine A. Patten, one of the petitioners, for some reason not appearing here, was appointed administratrix ad eolligendem; on the 14th day of January, 1889, letters testamentary were issued to-the five daughters; on the 25th of that month the collector returned an inventory of the estate, and on the next day filed her account. In the same month exceptions to this account were filed by Mrs. Glover, and a motion was made by the four unmarried daughters to strike the exception of Mrs. Glover from the files. Afterwards, on the’8th of February, an order was passed reciting that “ the collector of the above-named estate having filed an inventory and appraisement thereof, and exceptions to the same, with a schedule of undervaluations, having been filed on behalf of Augusta P. Glover, one of the legatees and executrices of said estate, upon the ground of incompleteness and undervaluation; and a motion to strike out the said exceptions and schedule having been filed on behalf of Mary E. Patten, Josephine A. Patten, Edith A. Patten and Helen Patten, the other legatees and executrices of the said estate; and it appearing to the court from the receipts thereof on file that all and singular the personal property mentioned in the said collector’s inventory has been delivered to and receipted for by all the said executrices, it is this 8th day of February, A. D. 1889, on the motion of the solicitor for the said Augusta P. Glover, and without objection on the part of the solicitor of the said Mary E., Josephine A., Edith A., and Helen Patten, now present in court, after due notice of said motion: Ordered, that the said exceptions and schedule and the motion relating thereto, as well as the account stated on the basis of said-inventory and appraisement,‘may be withdrawn from the files of the court, and that a new inventory of all and singular the personal property of the said deceased be made by the executrices of the said estate, and four persons therein named hereby are appointed appraisers to make a new appraisement on the said new inventory.”
*397 Section 11 of subchapter 6, of Ch. Cl of the Act of 1798, is in these words: '
“ In case an inventory be returned by a collector, duly appointed, the executor, executrix, or executors, or administrator, administratrix, or administrators, thereafter administering, shg.ll, within three calendar months after the date of his) her or their letters, either return a new inventory, in place of the collector’s inventory, or any acknowledgement in writing, that he, she or they, have received from the collector the articles contained in the first inventory, or consent to be answerable for' the same, in the same manner as if the said inventory had been made out after his, her or their administering upon the estate.”
It evidently was with the view to this provision that the court passed this order, which recognized the latter of the two alternatives mentioned in the section and which declared it should be the equivalent of the return of a new inventory in place of the collector’s inventory.
.The order, nevertheless, directed another inventory to be returned by the executrices, although it appeared at the time there had been delivered to, and receipted for by, the executrices, all the personal property mentioned in the collector’s inventory. The order for this further inventory and appraisement was entirely exceptional in its form. The statute, section 2, subchapter 6, declares that “by granting any létters testamentary, or of administration, or of collection, a warrant or warrants shall issue, under the seal of office, authorizing two persons of discretion, not related to the deceased, nor interested in the administration, to appraise the goods, .’chattels and personal estate, known to them, or to be shown by the executor, administrator or collector.” And in a subsequent section, it is provided that where another inventory is to be made on account of newly discovered property, or assets not mentioned in the first inventory, two appraisers are to be appointed by a justice of the peace or judge of the Orphans’Court.' But the order *398 of the 8th of February named four persons as appraisers. Although we do not mean to say the Orphans’ Court, in its discretion, had no right to increase the number of appraisers named in the act; it is, nevertheless, clear the new inventory thus ordered was not that required ordinarily in the administration of estates.
The law with respect to the time within which the ordinary inventory is to be returned is thus stated in section 13, of subchapter 6 of Ch. Cl of the Act of 1798.
“If an executor or administrator shall not, within three months after the date of his letters, exhibit to the Orphans’ Court, an inventory as aforesaid, a summons, returnable within not less than eight, or more than thirty days, may, ex officio or on application of a person interested, be issued against such executor or administrator, to show cause wherefore such inventory hath not been exhibited, and if the summons be duly returned “summoned,” or .upon two citations returned non est by the sheriff' of the county wherein the party resided at the time of obtaining his letters, or of the county wherein the letters were obtained, in case the party doth not reside in the State, and if he doth not appear at the return of the summons, or appearing shall not show cause satisfactory, the said court may immediately enter on its proceedings and record, that the said letters be revoked, and may proceed to grant other letters, in the same manner as if such executor had not been named in the will, or as if such administrators were not in existence; and the power of such executor or administrator shall thereupon cease, and he shall be bound to deliver up, on demand, to the person obtaining such letters, all the property of the deceased in his hands, or be liable to be sued by such person on his administration bond, or the court may pass an order for the purpose.”
If the further inventory was to be governed in all respects by the rules applicable to ordinary inventories, then it should have been returned “ within three months after the *399 date of the letters,” and in that case the four executrices must be held to have been in default at the time their application was made to remove Mrs. Glover from the administration, because the letters testamentary were dated the 14th day of January, 1889, and their inventory was not exhibited to the Orphans’ Court until the 27th day of April, more than three months after that date.
But we have no idea the proceedings authorized by section 6, subchapter 6, should have been enforced against the four executrices, because the special inventory was not exhibited until thirteen days after the expiration of the three-months; since that section should be held in strictness to apply only to default in returning the ordinary inventory.
This is in accordance with the view taken by the Court of Appeals of Mississippi in Dowdy et al., Executors, vs. Graham, Executor, 42 Miss., 452; where one of the three executors, who had made return of an inventory of the debts due to the State, asked that his co-executors should be discharged and removed as executors, because, among other misconduct, they had failed to join him in the inventory. The law of that State as to inventories resembled very much the corresponding provisions of our Testamentary Act. But the court held the inventory referred to in the section of the Mississippi Code covering the ground of section 14 of subchapter 6, of our statute, was the ordinary inventory required to be made by the executors after the grant of letters; and that the “refusal” of the two executors to unite in the inventory of debts was not a ground for declaring that “the power and authority of the person so refusing shall thereafter cease.”
Strict as is the injunction of section 13, subchapter 6, that the ordinary inventory shall be exhibited within three months after the grant of the letters, the court is nevertheless authorized by section 6 of subchapter 6, to grant further time, upon application. That section provides that—
*400 “When the inventory shall be finished, the appraisers shall certify the same, under their hands and seals, and a certificate of their having taken the oath or affirmation as aforesaid, shall be thereto annexed; and every inventory shall be returned to the proper office within three calendar months from the date of the letters; or within such time from the date of the warrant, in case a second warrant shall have issued, as the case may require, unless further time on application of the party shall be granted by the court.”
We can see no reason why further time should not equally be granted to an executor within which to return a special inventory like that required by the order of the 8th of February. Indeed, the language of this section expressly designates “the date of the warrant, in case a second warrant shall have been issued,” as the period from which the further time the court may grant an application, shall be measured.
The construction urged by t'he petitioners is one of excessive rigor, which would practically work a confiscation of valuable rights, a disregard of the expressed wishes of testators, and an injury to the administration of the estate. The position of an executor is a valuable office, from which he should not be deposed without the opportunity of defense. In this case the commissions of each of the five executrices must amount to at least five thousand dollars; according to the liberal scale of commissions allowed in this jurisdiction. The censure implied in the removal of an executor, which must inevitably be taken as a summary conviction of neglect of duty, constitutes a further important reason why such action should not be taken without a fair chance of explanation. It is inconceivable that the Orphans’ Court would have refused the petitioners an extension of time for filing the inventory of the 27th of April, or would have denied to Mrs. Glover further time, after that inventory ha.d been filed, if there had been brought to its knowledge a satisfactory reason why such extension should have been granted.
*401 That so severe a construction of the section under examination might readily thwart the wishes of the testator, is obvious. A testator frequently associates with his children as executor' a business friend who has been selected from apprehension of the lack of business qualities in those who he felt bound also to appoint.
If those who may desire to be rid of this coadjutor ape bent on doing so, they might return an inventory immediately after their appointment, without communicating with the other executor, who might be absent from the jurisdiction, or ill, and if, at the expiration of two months from that time, they claim his dismissal because of his neglect to join in the inventory, a literal construction of the section would leave to the court qo alternative but to prbnounce his dismissal from further^ interference in the estate. He might present himself to the court as soon as the action of his coexecutofs h§d come to his knowledge, prepared to show that the whole proceeding was a dishonest trick, planned bjr the co-executors to procure his dismissal, while he had been unconscious from illness, or that he had been absent from the country upon indispensible business, during the entire two months, but the Orphans’ Court would, under this construction, be without authority to examine such charge of fraud and trickery, or to consider that the failure had been caused by the act of God in visiting the party with grievous disease, simply because these excuses were presented sixty-one days after the filing of the inventory by the co-executors. If the court has power to import into setítion-14, subchapter 6, the general provision that three months’ time shall be allowed to executors to exhibit an inventory, it should have the power to introduce the further provision from other parts of the act, authorizing the period of three months to be extended, upon proper cause shown. There can hardly be found any other provision of the act which ever received so harsh a construction.
Is there any such peculiar importance in the requirement *402 of section 14 of subchapter 6, or connected with the subject of inventories in general, that demands this exceptional severity of construction?
The provision of the act upon the general subject already cited (Section 6, Subch. 6) requires an inventory to be returned within three calendar months by the executors, unless further time is granted by the court. The purpose of requiring an inventory is plain: — it is that creditors, and all others interested, may be informed what are the assets of the estate, and may thus be advised of the steps necessary to assert their claims. But the act authorizes the Orphans’ Court to dispense altogether with the presentation of an inventory in certain cases; and the case before us is probably one of that character.
The will of Mrs. Patten is not presented by the rather meagre record, but if she bequeathed all her personal property to her five children, as was asserted in the argument, or if they were left residuary legatees, then there was no necessity for the return of an inventory at all. Under section 6, of subchapter 14—
“No executor shall be obliged to exhibit any inventory or account, provided he will give bond, instead of the bond hereinbefore directed, with such security and in such penalty as the court shall approve, to the State of Maryland, to be recorded and sued as before directed,- with condition for paying all just debts of and claims against the deceased, and all damages which shall be recovered against him as the executor, and also all legacies bequeathed by the will, provided the said executor be residuary legatee, or provided the residuary legatee of full age should notify his or her consent to the court; and in case such bond be given by an executor, he shall be answerable for all debts, claims and damages recovered against him as executor.”
And, again, by section 7 of that subchapter
“No administrator, entitled to the whole residue after payment of debts of, and claims against, the intestate, shall *403 be obliged to return an inventory or account, provided he will give bond, with such security, and in such penalty as the court shall approve,” etc.
As an estate, in. the cases so described, might well be settled up without returning an inventory, it would seem unreasonable that the filing of such a return, punctatim, by a day certain, could be considered as so thoroughly of the very essence of the administration, that its omission would justify the harsh proceeding demanded by the motion. Especially was there no reason for this harshness in the case before us, because Mrs. Glover, in connection with the other executors, had already receipted to the collector for all the personal estate mentioned in the collector’s inventory, and her receipt had been filed in the Orphans’ Court,acknowledging the delivery to all the executrices of all that property. The purpose of the statute, as to notice to persons interested, had already been gratified, and there is no pretence that any person whatsoever had received any damage from the delay of Mrs. Glover to file her additional inventory within the sixty days.
It is true the Orphans’ Court is forbidden under any pretext of incidental power or constructive authority to exercise any jurisdiction not expressly conferred bylaw. But this principle is not to be so applied as to forbid that court in the exercise of that jurisdiction from adopting a method of procedure that may not be specified in the grant of power. Thus, by section 1 of subchapter 14, it is declared that “ if any person entitled to administration, shall deliver or transmit to the Orphans’ Court a declaration admitting that he is willing to decline the trust, the court shall proceed as if such person were not entitled.” Although the section does not expressly say the court may appoint a successor to an administrator who resigns his trust, its authority to do so .cannot be doubted.
In Comstock vs. Crawford, 4 Wall., 404, it was held that the power to accept the resignation of an administrator and *404 make a second appointment (in the absence of any statute authorizing such resignation) were necessary incidents of the power to grant letters of administration in the first instance. So the jurisdiction to depose a defaulting executor from all further authority in the administration, for neglecting to make a return within two months after his co-executors have exhibited an inventory, carries with it, as part of the power, the authority to withhold such action, when the court, upon a full explanation of the facts, shall see that the default was not culpable or from willful neglect of duty. In such a case, the court, in sympathy with the more lenient provisions of the act, may grant an extension of time for making the return; and this although the excuse may not have been presented until more than two months after the filing of the inventory by the other executors.
• We have seen that by section 13, subchapter 6, the court may, upon application of a person interested, issue a summons against an executor who has not returned the usual inventory within three months, requiring him within not more thirty days to show why the inventory has not been exhibited; and after summons and failure to show cause satisfactory for his neglect, the court may “ revoke ” his letters. The action demanded under the present motion is equally fatal to the rights of the executor; while it may leave her answerable under her bond to a greater extent than if her power had been absolutely revoked under section 13. The law on the subject of revocation of letters is discussed in 1 Woernor’s Law of Administrations, chapter 29. In section 269, the author cites cases to show that the discretion of judges of probate to remove administrators, is to be exercised in furtherance of the paramount end and aim of the law. “ Such is the law in every State of the Union, although couched in different phraseology, as well as at this day, in England.” “And there shall never be a revocation without due notice to the party, informing him *405 of the matters alleged against him, and enabling him to defend.”
In section 271, it is stated that “before a creditor can have an administrator removed, he must allege and show that he has been injured by the maladministration complained of, and the court has no authority to remove one upon the complaint of his co-executor who is not injured.” The author refers in this section to a great number of cases sustaining this general doctrine.
In Levering vs. Levering, 64 Maryland, 399, which construed the provisions of the Testamentary Act of 1798, Oh. 101 (the statute before us), respecting the removal of the executors, the court expressed itself thus: “It has been held in some of the States that the power of removal is inherent in the courts of probate, and must necessarily exist in order to prevent a failure of justice. In Maryland, however, an administrator or executor can only be removed for legal and specific causes and after citation and an opportunity to be heard in opposition to the motion. The Orphans’ Court has no constructive powers. It has few of the attributes appertaining to courts of general jurisdiction. Its jurisdiction is limited and created by statute, and its exercise of power can receive no support from presumptions. We must, therefore, look to the sources of its power, which are to be found in numerous legislative enactments, designating its duties, and conferring the jurisdiction to the proper performance of its functions.” “Justice requires that an executor or administrator should always be permitted to urge in his defense any matters of exculpation which may exist.”
If this were not the law on this subject, it would be an anomaly in our whole system of jurisprudence. In England it was a cardinal doctrine that forfeitures were not to be favored, and it was not until the reign of Henry VIII, that an act aimed against the priests and churches declared for the first time that there might be a forfeiture for treason *406 without office found. The conviction, and still less th'e mere charge of serious crime, involved at common law no forfeiture of itself — the forfeiture only began from an adjudication to that effect.
The laws and constitutions of most of the States, at this day, disqualify a party engaging in a duel from ever thereafter holding an office of profit or trust. But no such disqualification can take place until there has been a conviction for a breach of the statute. Under the ancient law which confiscated as a deodand the weapon or instrument that caused a violent death, there could be no forfeiture without office found.
- Indeed there is nothing more firmly imbedded in our jurisprudence, constitution and laws, than the principle that a man is not to be condemned without a hearing, nor to be deprived of his property or rights without having been first afforded an opportunity of defending himself in the courts. This principle would be wholly set at naught in this case if we were to hold that Mrs.' Glover has forfeited her right and office as executrix, because she has not filed an additional inventory within sixty days after her sisters had seen fit to exhibit one to the court, and that because she had shown cause for her delinquency within that period, she cannot now be heard to justify her omission.
Believing she has a right to be heard now in exculpation, we proceed to examine whether in her defense she “ assigns to the court some reasonable excuse which it shall deem satisfactory.”
Our attention is first called to the answer of Mrs. Patten to a petition filed by her sisters on the 10th of May, 1889, in which they pray the court to pass upon their several claims against their mother’s estate described in the petition, and authorize their payment. On the same day an order was passed requiring Mrs. Glover to show cause why the relief prayed should not be granted. The. petition avers the filing of “an inventory of the personal estate of the de *407 ceased” &c., by the petitioners on the 27th of April, but that the said Augusta Patten Glover, although requested so to do by the petitioners, did not unite in returning said inventory at the time it was so returned as aforesaid, nor has she as yet so united, nor has she returned any other or different inventory in the premises. That their mother at her death, was indebted to the four petitioners in the sum of $45,000, by reason of her administration of their father’s estate, and “that, as the petitioners are advised, they may not retain for their said claims against the said Anastasia Patten, deceased, hereinbefore set forth, unless the same be passed by this court; to which end they accordingly pray the court to pass upon their said several claims and authorize the payment of the same, and to that end all necessary orders may be made, directions given, and proceedings had.”
Mrs. Glover, in her answer, proceeding to show cause, took up seriatim the allegations of the petition. She admitted she was requested by the attorney of the petitioners to unite in the return of the inventory, and that she did not so unite, nor has she since united or filed any other inventory. “This respondent says that when so requested she was confined by sickness to her bed, as was fully explained to the said attorney; that the said inventory was sent to her chamber, and that upon the best examination she could give the said inventory she found that the same, so far as it went, was correct, but that it wras not a full, true and perfect inventory, as required by law, valuable articles belonging to the deceased being omitted, and especially there was, as she was informed and believed, an omission to return assets of the estate to the value of $45,000, consisting of evidences of debt, which were, with the other securities of the deceased in her possession and belonging to her at the time of her death, which evidences of debt thus omitted from the inventory were, as this respondent charges upon information and belief, never given to the *408 petitioners, or any of them, and that these evidences of debt are what, on the unfounded assumption that they were so given, is set up in the said petition as a payment to each of the petitioners on account of eleven thousand twro hundred and fifty dollars ($11,250); in all, forty-five thousand dollars ($45,000), in support of the pretended theory of indebtedness set up in the petition. The respondent says that although she is an executrix under the will of the said Anastasia Patten, and although the said assets were as aforesaid in the possession of the decedent at her death and a part of her estate, the complainants and their agent, though often requested, had, at the time-of the said inventory, refused to give this respondent any information as to the nature of the claim or title they alleged to said property, or when or where the transfer to them,' if any, was made, or the particulars thereof, so as to enable this respondent to prepare the said inventory or to allow the said respondent to inspect the papers said to be connected therewith, but concealed the same, and the said assets from the said respondent, whereby she was unable to sign the said inventory in the absence of such information; and respondent further says that she advised the said complainants that it would be necessary for her to know, in order to make the said inventory from them, whether they claimed the said assets by virtue of a gift, or payment or otherwise, and the particulars thereof, and that the said respondents, being so advised, refused to make any disclosure touching the same. The respondent is still confined to her chamber, but so soon as sufficiently recovered it is her intention to take such action in respect to the said inventory as in equity and conscience may be proper, and her duty as executrix may require.”
She then sets forth at great length, the origin of the supposed claim of the petitioners, denies its validity, and assigns reasons why the notes for $45,000 should be included in the inventory for the estate. After the filing of this answer no further movement was -made by the petitioners *409 until the 13th of June, when the following order was passed by the court on their motion:
“ The petition of Mary E. Patten, Josephine A. Patten, Edith Patten and Plelen Patten, with the answer thereto of Augusta P. Glover, in pursuance of the rule to show cause, now came on to be heard and was argued by counsel and considered bj^ the court, and it appearing to the court that the said petition presents a subject-matter within the jurisdiction of the court, but that the claims of the petitioners cannot be determined by this court without the determination of matters whereof this court has not jurisdiction, such as the effect upon the said claims of the will of the testatrix, the paymeht to respondent on account, as alleged and denied, and other matters it may be; it is therefore ordered, adjudged and decreed this 13th day of June, 1889, that further action upon the said petition be, and the same is hereby, suspended until said other matters, whereof this court has not jurisdiction, shall be first tried and determined in the appropriate tribunal in such manner as counsel may advise.”
On the 28th day of June, fifteen days afterwards, and sixty-two days from the 27th day of April, when the inventory was filed, the present motion was made to exclude Mrs. Glover from further interference in the administration of the estate. As we have seen, the justice below, on the 28th of June, allowed her leave to show cause against the application, and she accordingly filed another answer, repeating at length all the matters set forth in her previous response, in excuse of her alleged neglect. Her first answer filed within the two months was before the court when it passed its order on the 13th of June. The last answer filed in accordance with the order of the 28th of June, more than two months after the return of the inventory, sets forth with more particularity the circumstances of her illness; her confinement in childbirth ; her inability to leave her house or examine the papers connected with the estate; or to go *410 over her mother’s house and compare the articles there with the inventory; that she had been unable to obtain necessary information with regard to the' asséts of the estate from her sisters, who have been in sole possession of all the books, papers, evidences of indebtedness, and all the personal property of mother; that being informed that her sisters made claim to certain evidences of debt amounting to $45,000, said to be secured by a deed of trust, as belonging to them, and not the estate, she asked permission to examine the same, but was refused leave to do so; that being prevented from obtaining the information in this manner, she was compelled to file a bill for discovery against John E. Beall, a real estate agent of Mrs. Patten, for the purpose of learning the particulars of said claim, so that she could make a proper inventory of the estate, as she was informed said Beall was so connected with the transaction that he could explain it; but that Beall, instead of making a full and fair disclosure of the facts within his knowledge, had placed himself in the hands of the counsel of the petitioners, and through him had endeavored to avoid such disclosure upon technical grounds, by demurrer; that she believes the notes for $45,000 belong to the estate of her mother, and not to her sisters exclusively, and that no inventory of the estate would be complete that would not include them. She further says, “ as she has hereinbefore stated, and as she, in substance, stated in the pleading by her filed in answer to the petition of her co-executrices, to have certain claims allowed and .to which pleading reference is hereby made, she adopts and approves and makes her own the said inventory, in so far as it states assets belonging to said estate.” “ That her failure to file any other or additional inventory has been and now is because of her sickness, as hereinbefore set forth, together with the acts of concealment hereinbefore averred, and she avers her readiness and willingness and states it to be her purpose to file a complete inventory of said estate as soon as the facts in relation to the matters in *411 objection to said inventory filed by her eo-executriees referred to can be ascertained by her, and that she intends diligently to seek the information necessary to enable her to file such inventory.” .
After a careful examination of the entire record we are all of the opinion that Mrs. Glover has disclosed to the court a reasonable excuse for not joining in the inventory of the 27th of April, and it is our unanimous opinion that this court, sitting here, as we do for the time being, as judges of the Orphans’ Court, are bound to recognize that excuse as altogether satisfactory.
It was insisted that the excuses presented by the first answer cannot be considered by this court because, although made within the two months, they were made in reply to the application to prove their claim, and therefore should not be considered upon the present inquiry. But all that was said in the first answer as to Mrs-. Glover’s excuse for not joining in the inventory wa-s in response to the allegations of the petition. If she had not noticed these averments her answer would have been incomplete; as framed it was only responsive to what the petitioners saw fit to aver, and that answer was before this court before the two months had expired.
The Orphan’s Court was instituted as a popular court. The judges were not required to be learned in the law, and probably not one of them in the State. of Maryland was ever a lawyer. It was intended to be a court where the aid of lawyers was scarcely considered necessary to the conduct of an administration, where no formal pleading was allowed, and to hold that a judge would be justified in shutting his eyes to important facts of a case, plainly developed before him in its progress, because they had been presented in an untechnical manner, and had been written on one piece of paper rather than on another, and to decree as if those facts had never appeared in the case would be at variance alike with the theory and practice of that tribunal. *412 It would have been the business of the judge to have taken cognizance of such an excuse if it appeared in the proceedings of the court, however presented, and even if the facts had never been written down in legal form, or at all. If Mrs. Glover, within the two months, had orally presented those excuses, the court would have been justified in acting on such an explanation, and in refusing to enforce the rigor of the provision against her. And the defenses presented by the first answer, thus cognizable by the court when the present application was made, were in themselves so reasonable that of themselves they constituted a satisfactory cause for withholding the order asked for on the 28th of June. And as the defenses in the answer to the present application, although not filed until after the expiration of the two months, of themselves also presented a sufficient cause for not granting the order, the two together, of course, constitute a still more satisfactory reply to the application.
Apart from the illness of Mrs. Glover, the refusal of the petitioners to exhibit to her the evidences of their claim to the $45,000 constituted an ample reason why she should decline to return.her final inventory until that information had been furnished. It was contended that she had no right to ask the production of the muniments of title of the petitioners. But this idea is the predicate of the assumption of the very question in controversy, namely; the ownership of the notes. We are told the claim belongs to the petitioners only by themselves; and Mrs. Glover quite as positively denies their exclusive ownership. Of course, if she is correct, her .right to inspect her own property is as clear as theirs can be. _ They are sisters, and equals; and we see no reason why we should receive or reject the assertions of one sister rather than those of another.
But if Mrs. Glover had set up no personal interest whatever in the claim, still it would have been her duty as one of the executors to demand an inspection of the evidences of the claim, before assenting to its being withheld from *413 the inventory ; and all the more because it was presented by her co-executrices. An executor is bound to return under oath all the assets of the decedent’s estate “that may come to his sight or knowledge; ” and Mrs. Glover had a perfect right and. it was her duty, if she deemed it necessary, to examine every article in the house, and every evidence of debt; and no one had the right, upon any pretense, to prevent her from making such an examination. No court can ever decide whether the claim is well founded, unless the papers are produced before it, and without such production and full examination the Orphan’s Court has no right to allow it. So obvious and reasonable a claim on her part could never have ' been resisted, unless one of those inexplainable jealousies had arisen which sometimes occur wh'en'one daughter marries and leaves the old home, and those who remain seem to assume that their rights in the house are superior to those of the sister who has established new interests for herself elsewhere.
The order of the 28th of June,, 1888, should be annulled and set aside, and the case remanded; and an order will be passed in accordance with the principles of this opinion..